IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GEORGE B. MORRIS, | ) CIVIL ACTION 4:05-2474-.TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## I. PROCEDURAL HISTORY

The plaintiff, George B. Morris, filed applications for DIB on September 28, 2000, alleging disability since March 15, 1999, due to pain in the shoulders, hip, neck, back and knees and an anxiety disorder (Tr. 15, 39-41, 61). His applications were denied initially and upon reconsideration (Tr. 11-22, 33-35). Following a hearing, the Administrative Law Judge (ALJ), William H. Hauser, found, in a decision dated July 23, 2002, that plaintiff was not disabled. The Appeals Council denied

plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

On August 25, 2005, plaintiff filed a complaint in this Court, alleging that the Commissioner's decision is not supported by substantial evidence.

## II.  FACTUAL BACKGROUND

The plaintiff, George B. Morris, was born on October 13, 1969, and was 32 years of age on the date of the ALJ's decision. (Tr. 39). Plaintiff has a high school education and has worked as a printing press operator, loan officer and forklift operator (Tr. 67, 288-292).

## III.  DISABILITY ANALYSIS

In plaintiff's brief, he argues that the ALJ erred in not finding plaintiff totally credible and viewed the evidence from a narrow perspective refusing to give sufficient weight to the evidence that would result in a favorable ruling for plaintiff.

In the decision of July 23, 2002, the ALJ found the following:

(1) The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2) The claimant has not engaged in any substantial gainful activity since his alleged onset of disability.

(3) The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

(4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6)   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

(7)   The claimant has the following residual functional capacity: lift up to three to five pounds frequently and five to ten pounds occasionally. He can perform no work above shoulder height and would require a sit/stand option. He would need simple two-step work that was not repetitive.

(8)   The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

(9)   The claimant is a "younger individual" (20 CFR § 404.1563).

(10)  The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

(11)  The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision, but they will not transfer due to his residual functional capacity (20 CFR § 404.1568).

(12)  The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

(13)  Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a cashier, 2400 jobs in South Carolina and 140,000 jobs in the national economy; and surveillance monitor, 400 jobs in South Carolina and 54,000 in the national economy. There would be a 25% reduction in the cashier jobs, given the sit/stand option, but this would still

>> leave over 100,000 jobs in the national economy in this classification.
>
> (14) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 20-21).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein.

In June and September of 1990, plaintiff underwent arthroscopic surgeries to repair a torn meniscus in the right knee (Tr. 210-211, 217).

On March 27, 1996, plaintiff sought treatment from William L. DeVault, M.D. for complaints of right-shoulder pain. Dr. DeVault noted that plaintiff was "a very active person" with no previous health problems and a history of arthroscopic knee surgeries. Examination revealed limited range of motion of the right shoulder and no instability, and x-rays showed no arthritic changes or other abnormalities. Dr. DeVault administered a subacromial bursa injection (Tr. 136).

On April 10, 1996, plaintiff informed Dr. DeVault that his shoulder was feeling "O.K.," but he complained of neck discomfort and right-arm pain when using his right arm. Dr. DeVault noted an impression of right shoulder cervical radiculopathy and mild shoulder bursitis and ordered an

MRI scan of the cervical spine. The MRI showed mild degenerative changes without disc protrusion (Tr. 129-130, 135).

On April 24, 1996, plaintiff complained to Dr. DeVault of continuing right shoulder pain. Plaintiff also complained of chronic left acromioclavicular (AC) joint separation and left-shoulder pain with heavy lifting. Dr. DeVault rendered an impression of AC joint instability and separation with AC joint arthritis, and recommended surgical reconstruction of the left AC joint "at some point" (Tr. 128).

On May 3, 1996, Thomas N. Bernard, Jr., M.D., an orthopedic surgeon, examined plaintiff on a referral from Dr. DeVault. Plaintiff complained of neck pain, right-shoulder pain and left-shoulder weakness. Dr. Bernard found plaintiff had normal behavior, affect, posture and gait; full range of motion of the cervical spine; normal motor, reflex and sensory functioning; full range of motion of the right shoulder; a prominent left AC joint; and some crepitation and tenderness in the right shoulder. Dr. Bernard recommended physical therapy (Tr. 123-124).

On May 24, 1996, plaintiff underwent an MRI scan of the right shoulder which showed no evidence of a rotator cuff tear and minimal degenerative change of the AC joint. An MRI scan of plaintiff's thoracic spine, performed on the same date, was essentially unremarkable (Tr. 112).

On June 3, 1996, Daypro was prescribed for plaintiff for right-shoulder pain (Tr. 109-110).

On June 4, 1996, plaintiff began a course of physical therapy (Tr. 100-105).

In 1996 and 1997, plaintiff underwent chiropractic adjustments for treatment of neck, shoulder, and upper-back pain (Tr. 165-170).

On February 24, 1999, plaintiff complained to James H. Walker, III, M.D., of low back pain. Dr. Walker prescribed medication and advised plaintiff to avoid heavy lifting for the next four weeks (Tr. 206).

On August 4, 1999, Dr. Walker prescribed medication for plaintiff for muscle tension headaches and allergic rhinitis (Tr. 206).

On February 23, 2000, plaintiff complained to Dr. Walker of right-shoulder pain. Examination revealed evidence of subluxation of the humeral head and crepitus with range of motion. Dr. Walker injected plaintiff's right shoulder with Depo Medrol and prescribed a rotator-cuff exercise program (Tr. 206).

On December 4, 2000, Larry Korn, M.D., D.O., examined plaintiff at the request of the Commissioner. Plaintiff complained of reduced range of motion in the right shoulder; some occasional pain in the left shoulder; crepitus and reduced range of motion in the neck; difficulty with prolonged sitting or standing; and right-knee pain, especially in cold, damp weather. He reported that he worked at a chemical plant until March 1999, when he left due to shoulder problems. Dr. Korn observed that plaintiff had a normal gait, that his mood was good, and that he communicated and comprehended well. Upon examination, Dr. Korn found plaintiff had normal range of motion in the left shoulder; normal range of motion, full strength and no edema in the lower extremities; normal reflexes; limited range of motion and positive impingement signs in the right shoulder; slightly diminished (4+/5) grip strength; and limited range of motion in the cervical spine. He reported impressions of impingement syndrome in the right shoulder, nonspecific neck pain with degenerative joint disease "by history," nonspecific low back pain and status-post meniscal injury to the right knee with two arthroscopies. Dr. Korn concluded that plaintiff "would have difficulty

doing vigorous activities above shoulder level due to limitations at the right shoulder, which may not be at maximum medical improvement"(Tr. 228-230).

X-rays of plaintiff's lumbar spine on December 4, 2000, ordered by Dr. Korn showed minimal wedging of the T-12 endplate and no other abnormalities. X-rays of plaintiff's right knee, performed on the same date, showed a small effusion but no evidence of acute injury (Tr. 207-208).

On December 8, 2000, Spurgeon Cole, Ph.D., performed a psychological examination of plaintiff at the request of the Commissioner. Plaintiff related that he was disabled due to problems with his back, shoulders and knees, and that he felt anxious. Plaintiff stated that he took no medications with the exception of two Aleve tablets each morning, that he had never been to a mental health center, and that he had satisfactory energy and enjoyment of life. Plaintiff reported that he performed light chores when not in pain, shopped for groceries, attended church every couple of months, enjoyed being around people, visited his parents frequently and spent much time watching television and reading. Dr. Cole found that plaintiff appeared to be in satisfactory health, was quite talkative and animated, demonstrated average cognitive ability, and had adequate memory, normal thought processes and adequate attention. He concluded that plaintiff was capable of learning normal work skills, had satisfactory social functioning and possibly had moderately-impaired concentration. Dr. Cole reported a diagnosis of generalized anxiety, moderate (Tr. 231-232).

On December 20, 2000, Lisa Varner, Ph.D., completed a Psychiatric Review Technique Form (PRTF) concerning plaintiff at the request of the Commissioner based on a review of plaintiff's records. Dr. Varner reported that plaintiff had an anxiety-related disorder which resulted in mild limitations in activities of daily living, mild limitations in social functioning, moderate limitations

in concentration, persistence and pace, and no extended episodes of decompensation. (Tr. 243-244). On May 8, 2001, Xanthia P. Harkness, Ph.D., affirmed Dr. Varner's assessment (Tr. 245, 249).

On December 20, 2000, Dr. Varner also completed a Mental Residual Functional Capacity Assessment concerning plaintiff. Dr. Varner reported that plaintiff had no significant limitations in most areas of work-related mental functioning, no marked limitations, and moderate limitations in the following areas: understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods. Dr. Varner stated that plaintiff could comprehend, remember and carry out simple instructions; relate adequately to supervisors and co-workers; and adapt to changes in the workplace (Tr. 247-249).

On December 29, 2000, a State Agency medical consultant assessed plaintiff's physical residual functional capacity at the request of the Commissioner, based on a review of plaintiff's records. The physician concluded that plaintiff could perform medium work[1] which involved limited overhead reaching with the right upper extremity and no more than occasional climbing, stooping, kneeling and crouching (Tr. 254-261). Gerald E. Fisher, M.D., affirmed the physician's assessment (Tr. 261).

On February 22, 2001, plaintiff sought treatment for anxiety and depression due to financial crisis at Anderson-Oconee-Pickens Mental Health Center. Plaintiff reported symptoms of poor sleep, loss of appetite, anxiety over finances and feelings of hopelessness. He denied any previous inpatient or outpatient mental-health treatment and stated that he took no medications (Tr. 251-253).

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work." 20 C.F.R. § 404.1567(c)(2005).

Vibha Parkash, M.S.W., concluded that plaintiff failed to meet the criteria of any mental illness (Tr. 252).

On May 8, 2001, Xanthia P. Harkness, Ph.D., affirmed Dr. Varner's Mental Residual Functional Capacity Assessment (Tr. 249).

On April 24, 2002, Dr. Cole reported that when he evaluated plaintiff, he was not taking any medications, but that he was currently taking Bextra for arthritis. Dr. Cole also stated that plaintiff continued to display symptoms of generalized anxiety disorder; that he was very active as a child and most likely had attention deficit hyperactivity disorder (ADHD); that he continued to have some difficulties with hyperactivity and staying on task; that he exhibited a lot of muscle tension and increased autonomic activity and experienced feelings of impending doom; and that he displayed some symptoms of an obsessive compulsive disorder, including frequent hand washing, fear of germs and recurrent thoughts. Dr. Cole reported diagnoses of generalized anxiety (moderate), obsessive-compulsive disorder (moderate), and adult ADHD (moderate) (Tr. 277-278).

## V. ARGUMENTS

Plaintiff argues that "both pain and the non-exertional impairments set forth in the findings of Dr. Spurgeon Cole would limit the Claimant in such a fashion that he would not be able to stay on task and if that in fact is true, then the Claimant would be disabled and entitled to a period of disability benefits." (Plaintiff's brief, p. 8). Further, plaintiff asserts that the ALJ erred in not finding him totally credible.

Defendant argues that the ALJ's decision was consistent with the Commissioner's regulations and relevant case law.

Plaintiff appears to argue that the ALJ erred in not accepting Dr. Cole's supplemental report concluding that plaintiff "would not be able to stay on task" (Plaintiff's brief p. 8). This argument is without merit. A review of Dr. Cole's report actually states the following, quoted verbatim:

> Under Mental Status, I would like to add that he does display some symptoms of an OCD. He frequently washes his hands. He has some fear of germs and he has thoughts running through his mind that he can't stop. He is irritable and hyper active. I would consider the OCD to be a moderate disorder. He was very active as a child and was [sic] most likely had ADHD, mixed type. He continues to have some difficulty with his hyper activeness *as well as difficulties in staying on task.* Based on the last report, he was only able to remember two of three items after interference. This is rather poor performance for an individual who is only 31 years of age and has his cognitive ability. He continues to display symptoms of a generalized anxiety disorder. (Emphasis added).

(Tr. 277).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983)(a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will

be taken into account. Id. An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

There is substantial evidence in the medical record to support the ALJ's decision, and the ALJ did not err in the amount of weight he placed on the evidence from Dr. Cole. As stated above, Dr. Cole found that plaintiff "continues to have some difficulty with his hyper activeness as well as difficulties in staying on task." (Tr. 277). Dr. Cole did not find, as plaintiff argues, that he would not be able to stay on task. Further, the ALJ's decision is supported by the evaluation of plaintiff at the Anderson-Oconee-Pickens Mental Health Center and the non-examining physicians', Dr. Varner and Dr. Harkness, conclusions as set out above.

The ALJ thoroughly discussed his reasoning for not giving Dr. Cole's opinion controlling weight and discussed contradictory evidence from other mental evaluations and the plaintiff's testimony at the hearing. A review of the ALJ's decision reveals that he found the following with regard to Dr. Cole's conclusions:

> With regard to the claimant's possible mental impairments, I note that the Anderson Mental health found no evidence of mental impairments upon their examination. In addition, Spurgeon Cole, PHD, psychologist, who performed a mental status examination on December 8, 2000, initially noted only evidence of moderate generalized anxiety. Dr. Korn [sic] found that the only limitations the claimant would have from his anxiety would be a possible moderate impairment of concentration. This evaluation, coupled with the Anderson Mental health evaluation does not portray serious mental limitations. However, I do note that the claimant's attorney was able to get Dr. Cole to amend his evaluation, on April 24, 2002, to include diagnosis of moderate obsessive compulsive disorder and moderate adult ADHD. He also noted some difficulty with concentration, although he did not label the extent of the limitation, so that I will presume that it is also moderate. This evaluation is also confirmed by the claimant's performance at the hearing. He showed quite a good memory both for his past work and for the level of his limitations, so that I find that the claimant has the memory and concentration sufficient for two-step work, but not more. The claimant's ability to perform work, in spite of possible OCD and ADHD is further confirmed by his work record, which was quite good from the age of 19 up to the age of 29, when he alleges that he became disabled. Therefore, it is difficult to find that the claimant is disabled by either OCD or ADHD, in the face of a ten year history of sustained work.

(Tr. 18).

Based on the above, the ALJ fully set forth his reasoning and there is substantial evidence to support the weight he placed on Dr. Cole's statements in his reports.

Plaintiff also argues that the ALJ erred in not finding him to be totally credible. The plaintiff testified at the hearing that his greatest problem is his right shoulder due to pain and limitations of motion. Plaintiff testified that he has pain which runs from his right shoulder down through his fingertips resulting in a numbing sensation from time to time. (Tr. 295-296). Plaintiff testified that activity increases his pain level and he cannot lift a gallon of milk. (Tr. 298). Plaintiff testified that he has neck pain and headaches averaging one every 48 hours which causes him to be light and sound sensitive causing him not to want to do anything. (Tr. 304). Further, plaintiff testified he has

pain in his hips and back which limits his standing to one hour, his sitting to 5 minutes, and his bending and stooping. (Tr. 305-310).

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ cited numerous reasons for finding plaintiff's credibility was not without question. For instance, the ALJ concluded that:

> With respect to the claimant's credibility, he testified that his worst pain is in the right shoulder, where the nerves are pinched. He testified that he has limited range of motion and that it hurts on top of the shoulder. He further testified that he has pain at a level of six to seven all the time. For the pain, he soaks in a tub or takes a lot of aspirin. He also testified that he has pain in his shoulders (right worse than the left) and the neck and upper back, that causes headaches every day. He testified that these headaches last from 30 minutes to one hour. He also testified that he hurts in his hips, upper back, and lower back. He testified that he eases this pain by lying down. Bending or stooping exacerbates the pain. The claimant also testified that he is high strung and has been since he was a child. This makes it difficult for him to complete a job, according to his testimony. He also testified that he wants to be clean all the time, so that he bathes about three times each day.

> The claimant's wife testified that she does most of the work around the house, as she is the more patient of the two. She testified further that the claimant had difficulty completing work, when he worked as a loan officer for her father. She also described some compulsive hand washing.
>
> There are virtually no medical records to corroborate this testimony. As noted above, the claimant has not even been seen for complaints of back, shoulder, knee or other orthopedic pain since February 2000. And it is not as though the claimant has not been examined by his treating physician in the interval between that examination and the hearing. He saw Dr. Walker on four occasions in 2001. On May 31, 2001, he was seen for a recurrent herpes simplex infection. Although the right shoulder is mentioned, no prescription is given and no treatment was made other than mention of the possibility of seeing an orthopaedic surgeon. He was seen on August 23, 2001, with a stomach ache and told to stop taking Aleve, with Vioxx substituted. On December 6, 2001, he was seen with prostatitis and started on Bactrim, Flomax and Zovirax. On December 20, 2001, he was seen for a right rectus muscle strain. Levaquin was prescribed for 14 days. On none of these occasions, does the physician indicate that the claimant is having any problems with his back, knees or shoulders. Other than a Vioxx prescription, there is no medication prescribed for any of these conditions.
>
> If the claimant had neck, shoulder, back or head pain of the severity described at the hearing, I have to believe that he would have reported it to the physician on the occasions of these visits. There being virtually no report of pain in these areas, during these visits, I do not give full credibility to the testimony of the claimant or his wife regarding the severity of his pain. . .

(Tr. 17-18).

The ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations. The ALJ adequately addressed each complaint, as discussed, and explained his evaluation. There is substantial evidence to support the ALJ's determination as to plaintiff's complaints of pain and his credibility based on the objective medical evidence. It is also noted that none of the physicians placed any permanent restrictions on plaintiff's activities due to any of his physical conditions. While the plaintiff may have limitations, there is

substantial evidence to support the ALJ's decision that they are not so severe as to preclude him from the demands of all work.

The ALJ relied on the testimony of the VE at the hearing to find that there are other jobs in the economy that plaintiff can perform since he cannot return to his past relevant work. The purpose of a vocational expert's testimony is to assist the ALJ in determining whether jobs exist in the economy which a particular claimant could perform. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The ALJ found that the plaintiff has the residual functional capacity to perform a significant range of sedentary work. (Tr. 21). Therefore, the burden shifted to the Commissioner to show other work existed in significant numbers in the national economy that plaintiff could perform. The Commissioner met this burden through the testimony of Deanna Lane, a Vocational Expert ("VE").

The ALJ presented a hypothetical to the VE based on an individual of claimant's age, work experience, and education. In addition, she was asked to assume the following, quoted verbatim:

> . . . he is suffering from headaches, neck pain, left and right shoulder pain. He's been diagnosed with anxiety, obsessive compulsive disorder and attention deficit disorder. I want you to assume that because of these diagnoses, he suffers certain impairments that limit him to sitting six hours a day, standing two hours a day, lifting a maximum of –lifting five pounds with the left hand- - that's a maximum–lifting 20 pounds with the right hand. He can lift five pounds frequently with the right hand and three pounds frequently with the left hand. He requires a sit/stand option. He is limited to simple, two-step operations. Based on that hypothetical, are there any jobs that the claimant could perform in the national economy? . . . Oh, one other thing: he can't do anything- - any repetitive work–he can't do any lifting above his shoulders except on a very occasional basis and none with his right shoulder.

The vocational expert testified that given these characteristics this person could perform jobs in the national economy which the ALJ found to be significant numbers.

## VI.  CONCLUSION

Despite the plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

September 6, 2006
Florence, South Carolina